# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADELAIDO A. JACINTO,<br><br>        Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>        Defendant.<br>_____/ | CASE NO. 1:10-cv-01475-SMS<br><br>ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND DIRECTING ENTRY OF JUDGMENT IN FAVOR OF COMMISSIONER |

Plaintiff Adelaido Jacinto, by his attorneys, Law Offices of Lawrence D. Rohlfing, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act (42 U.S.C. § 301 *et seq.*) (the "Act"). The matter is currently before the Court on the parties' cross-briefs, which were submitted, without oral argument, to the Honorable Sandra M. Snyder, United States Magistrate Judge. Following a review of the complete record and applicable law, this Court affirms the Commissioner's decision.

**I.**     **Administrative Record**

    **A.**     **Procedural History**

On January 25, 2006, Plaintiff applied for disability benefits pursuant to Title II of the Social Security Act, alleging disability beginning September 21, 2005. His claims were initially denied on June 29, 2006, and upon reconsideration, on January 25, 2007. On February 28, 2007, Plaintiff filed a timely request for a hearing. Plaintiff appeared and testified at a hearing on May

13, 2008.  On July 24, 2008, Administrative Law Judge Michael J. Haubner denied Plaintiff's application.  The Appeals Council denied review on May 24, 2010.  On August 10, 2010, Plaintiff filed a complaint seeking this Court's review.

### B.     The Agency Record

In September and October 2005, Plaintiff (born December 16, 1960), previously employed as a tractor driver, underwent cardiac catheterization and valve replacement.  Following his surgery, Plaintiff's prescription medications included, among others, Coumadin, a blood thinner intended to minimize the risk of a future stroke.

On May 4, 2006, as an agency consultant, internist Mohinder Poonia, M.D., examined Plaintiff.  Poonia concluded his report:

> This 45-year-old Hispanic male patient is a known case of aortic valve replacement.  He has been on anticoagulent therapy with Coumadin.  The patient is being monitored closely.  The patient expresses his inability to work because he has hurting in the chest and weakness and tiredness.  However, the echocardiac examination revealed well-preserved left ventricular function without any evidence of L-V dysfunction.  His symptoms of aching in the chest appears to be musculoskeletal in origin and not cardiac in origin.  So the patient should be able to perform all the jobs requiring mild to moderate degree of physical exertion, however, strenuous exertion should be avoided.  *In view of the patient being on anticoagulent therapy, he should be careful working where there are sharp objects to avoid excessive loss of blood due to being on anticoagulant therapy.*

AR 254 (*emphasis added*).

Thomas Dachelet testified as vocational expert.  For all hypothetical questions, the ALJ directed Dachelet to assume an individual of the same age, education, language, and experience background as Plaintiff.  For the first hypothetical question, the ALJ directed Dachelet to assume an individual able to perform all jobs requiring a mild to moderate degree of physical exertion, however, strenuous exertion should be avoided. The ALJ added, "This person should be careful when working around sharp objects to avoid excessive loss of blood." AR 54.  The ALJ first asked Dachelet whether Plaintiff could perform his prior relevant work as a farm machine operator or day laborer.  Protesting that the description was "pretty nebulous," Dachelet opined that the hypothetical person could not perform either job due to the likelihood of a physical injury that would break the skin, such as a "busted knuckle."  AR 54-55.

///

      For the second hypothetical question, the ALJ directed Dachelet to assume an individual who could lift and carry 50 pounds occasionally, 10 to 25 pounds frequently; could stand, sit, and walk about six hours out of eight; had unlimited ability to push and pull; could frequently climb ramps and stairs, but should never climb ladders, ropes, or scaffold; should avoid concentrated exposure to hazards; should avoid overhead reaching with the left non-dominant extremity. Dachelet opined that the individual could not perform Plaintiff's past work. Such an individual could perform unskilled medium work such as packager (No. 964; 16,014 positions in California); line service attendant (55,231 positions in California); or extractor (machine) operator (No. 896; 16, 122 positions in California).

      For the third hypothetical question, the ALJ directed Dachelet to assume an individual who could lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk six hours out of eight; had limited ability to push and pull in the lower extremities; could occasionally climb, balance, stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to hazards. Dachelet confirmed the ALJ's assumption that such an individual could not perform Plaintiff's prior work, but opined that such a person could perform the full range of light and sedentary unskilled work. Examples of light or sedentary work that Plaitnff could perform, said Dachelet, included packager, line service attendant, and extractor (machine) operator.

      For the fourth hypothetical question, the ALJ directed Dachelet to assume an individual possessing the abilities to which Plaintiff testified, that is, the person could lift and carry five pounds; could stand one-half hour at a time, sit twenty minutes at a time, and walk about one block at a time; could concentrate in twenty-minute increments; and needed to lie down and rest three hours out of eight. Dachelet opined that no work would be available for such an individual.

      Plaintiff's attorney then examined Dachelet regarding the environment for the jobs of packager, line service attendant, and extractor operator, which Dachelet had offered as examples of positions in question two. Dachelet responded that because of the engineering of those positions, safety was not generally an issue. Dachelet conceded, in response to a follow-up question, that such positions might not be suitable for an individual with limitations of concentration, persistence, or pace. With regard to the attorney's questioning regarding the

hypothetical individual's English literacy, Dachelet opined that, when English language skills were absolutely required for a position, the number of available positions for an individual who was not literate in English would be reduced by approximately one-third. With regard to the exemplary positions offered as examples, however, Dachelet did not consider any substantial reduction necessary for a non-English-literate individual since supervisors of such unskilled positions were generally able to do cross-language interpretation. In fact, Dachelet testified, communication in simple and repetitive positions was generally minimal and was frequently discouraged.

## II.     Legal Standards

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering age, education, and work experience, engage in any other substantial gainful work existing in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process for evaluating an alleged disability. 20 C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f). The process requires consideration of the following questions:

| | |
|---|---|
| Step one: | Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two. |
| Step two: | Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate. |
| Step three: | Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four. |
| Step four: | Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five. |

///

| | |
|---|---|
| Step five: | Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled. |

*Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir. 1995).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since September 21, 2005.  His severe impairments included history of minimally invasive aortic valve replacement, history of right medial and lateral meniscus tear, obesity, and small tear of the left shoulder rotator cuff.  His impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  He was unable to perform any past relevant work.  Plaintiff had the residual functional ability to perform a wide range of light work.  The ALJ concluded that Plaintiff was not disabled from the alleged onset date to the date of the decision.

## III.    Scope of Review

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, a court must determine whether substantial evidence supports the Commissioner's decision.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards, and if the ALJ's findings are supported by substantial evidence.  *See Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 510 (9th Cir. 1987).

///

///

## IV. Discussion

Plaintiff's sole claim on appeal is that, in assessing Plaintiff's residual functional capacity, the ALJ failed to consider the requirement that Plaintiff, who takes anti-coagulent medication, avoid working in proximity to sharp objects. Plaintiff points out that the ALJ criticized Poonia's opinion as "somewhat vague" before adopting the state agency physician's opinion that light work was most consistent with Poonia's opinion. Plaintiff further contends that the ALJ erred by failing to include the restriction against working near sharp objects in his questioning of the vocational expert.

Analyzing Plaintiff's residual functional capacity in the hearing decision, the ALJ acknowledged Poonia's recommendation that Plaintiff "be careful when working with sharp objects due to his continued blood thinner treatment." AR 24. Because of the additional considerations of Plaintiff's knee surgery and obesity, the ALJ concluded that Plaintiff was limited to light work activity. In light of Plaintiff's residual functional capacity, age, education, and work requirements, the ALJ concluded that Plaintiff would have had the capacity to perform the full range of light work but for his additional limitations. Despite Plaintiff's additional limitations, however, the ALJ concluded that work appropriate for Plaintiff existed in significant numbers in the national economy.

The Commissioner responds that Plaintiff exaggerates his limitations by interpreting Poonia's comment as precluding Plaintiff's employment in any position including exposure to sharp objects. He emphasizes that, while Plaintiff may elect to interpret the evidence differently, in the end, the ALJ's determination is reasonable and entitled to deference if it is supported by substantial evidence. *Morgan v. Commissioner*, 169 F.3d 595, 601 (9th Cir. 1999).

This Court agrees with the ALJ's assessment that Poonia's unusually brief assessment of Plaintiff's physical health and residual functional capacity lacked the detail and specificity commonly present in consultative opinions. For example, Poonia stated that "the patient should be able to perform all the jobs requiring mild to moderate degree of physical exertion, however, strenuous exertion should be avoided," rather than express Plaintiff's limitations in the typical terms of sedentary, light, moderate, etc. Similarly, Poonia offered the equivocal statement that

Plaintiff "should be careful working where there are sharp objects to avoid excessive loss of blood due to being on anticoagulant therapy." Contrary to Plaintiff's interpretation, Poonia did not preclude Plaintiff's working in the presence of sharp objects but simply cautioned him to be careful in the presence of objects. Such a warning is no more than common sense advice to an individual, such as Plaintiff, for whom a relatively minor injury could result in greater than average blood loss.

Individuals receiving anti-coagulent therapy are generally not isolated from all potential injury. Even if they do not work outside their homes, such persons encounter numerous hazards in the course of their daily lives, from kitchen knives to thorns in the garden to the corners of coffee tables. In choosing their daily activities, individuals on anti-coagulent therapy assess the relative risks and benefits of their activities of daily living and proceed accordingly.

Hazards are also present in the workplace: some are acceptable risks for those taking anticoagulent medication, and some are not. Accordingly, Dachelet testified that Plaintiff's prior farm work was not an available occupation since it was likely to result in frequent injuries that would break the skin ("busted knuckles") but that work on factory lines, in positions such as packager, line service attendant, or extractor (machine) operator, had been engineered for safety and was an acceptable risk. The ALJ reasonably relied on that testimony.

So long as the ALJ's interpretation is reasonable and supported by substantial evidence, this Court may not reverse. Substantial evidence supported the ALJ's determination here.

## V.    Conclusion and Order

The Commissioner's determination that Plaintiff was not disabled is HEREBY AFFIRMED. The Clerk of Court is directed to enter judgment for Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

**Dated:    October 19, 2011**              /s/ Sandra M. Snyder
                                             UNITED STATES MAGISTRATE JUDGE